UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIAN ELIZABETH ST MARIE,<br><br>                         Plaintiff,<br>     v.<br><br>JEFFERSON COUNTY et al,<br><br>                        Defendant. | CASE NO. 3:22-cv-05893-DGE<br><br>ORDER ON MOTION TO DISMISS (DKT. NO. 9) |

## I.    INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss Claims Against Tuppence Macintyre.  (Dkt. No. 9.)

## II.    BACKGROUND

Plaintiff Julian St. Marie filed her Complaint against Defendant Tuppence Macintyre and other defendants on November 16, 2022.  (Dkt. No. 1.)  The bulk of the Complaint alleges various claims relating to Plaintiff's prior employment at the Jefferson County Prosecuting Attorney's Office ("JCPAO"), which ended prior to Macintyre's employment there.  The Court

will discuss only those facts concerning Macintyre as the Motion to Dismiss focuses on Macintyre.

Upon her termination from the JCPAO, Plaintiff "entered private practice in Jefferson County." (*Id*. at 25.) A defendant in "a serious felony matter" retained Plaintiff and she entered an appearance on their behalf in that case on January 28, 2022. (*Id*.) The JCPAO appears to have assigned Macintyre as attorney in the case. (*Id*. at 26.)

On November 4, 2022, Macintyre informed Plaintiff that "she, along with the JCPAO through [Jefferson County Prosecutor] Kennedy had adopted a policy of only communicating with the Plaintiff in writing or on the record." (*Id*.) Plaintiff alleges "[s]hort notice settings and compliance with other local rules require[ing] parties to confer were not available to the Plaintiff and her clients." (*Id*.)

Plaintiff asserts the "JCPAO adopted [the policy of communication only on the record or in writing] months after the Honorable Keith Harper, Jefferson County Superior Court Judge admonished Macintyre and instructed her not to engage in this conduct." (*Id*.) Since the November 4, 2022 letter, "Macintyre and the JCPAO continue to refuse to speak to Plaintiff unless it is on the court record or in writing." (*Id*. at 27.)

Plaintiff alleges "[Jefferson County Chief Criminal Deputy Prosecutor] Ashcraft's continued verbal denigration has encouraged Macintyre's behavior toward her." (*Id*. at 27.) She further alleges that as a result of "the disparate treatment . . . both she and her clients are prejudiced . . . . [and] [t]he JCPAO has tortiously interfered with [her] business expectations." (*Id*.)

### III. DISCUSSION

**A. Legal Standard**

Federal Civil Procedure Rule 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

In reviewing a motion to dismiss under Rule 12(b)(6), a court "may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F. 3d 449, 454 (9th Cir. 1994); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

**B. Cause of Action Number Three as to Macintyre – Retaliation – First Amendment**

1    In her third cause of action, Plaintiff asserts Macintyre and "Jefferson County violated Plaintiff's First Amendment right by imposing prior restraint upon Plaintiff's speech." (Dkt. No. 1 at 34.) This claim is premised on Macintyre informing Plaintiff that the JCPAO would only communicate with Plaintiff in writing or on the record, which occurred on November 4, 2022. (*Id*. at 26.) As none of the parties dispute Macintyre informed Plaintiff of this policy by a letter dated November 4, 2022 (*see* Dkt. No. 10 at 5–6), it is proper for the Court to consider the contents of this letter in evaluating the Defendants' motion.

As to the third cause of action, Defendants assert "Macintyre enjoys qualified immunity" and Plaintiff "fails to identify a cognizable violation of the First Amendment." (Dkt. No. 9 at 5.)

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To establish qualified immunity, courts consider "(1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation.'" *Sandoval v. County of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) (quoting *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Courts have discretion to assess either prong of the qualified immunity test first. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

Plaintiff cites no authority whereby limiting an attorney's communications with a prosecutor to on-the-record contacts or in writing would constitute a clear violation of a

constitutional right.  Although the case law need not replicate the situation, the Court could not find any decision indicating this type of restriction is unlawful, let alone a decision identifying such conduct is a clearly established violation of the First Amendment.  Unsurprisingly, Plaintiff recognizes the absence of any similar case.  (Dkt. No. 13 at 16) ("Counsel was not able to find a comparable case as this action is unprecedented.").

In contrast, in *Clark v. Wells Fargo Bank*, 2022 WL 203417 (D. Oregon, Jan. 14, 2022), a court limited a pro se plaintiff in a civil matter to communicating with opposing counsel in writing via email.  In response to this limitation, the plaintiff asserted the court's order was "a prior restraint on his speech[.]" *Id*. at *2.  The Oregon district court determined that even if this were considered a prior restraint on speech, plaintiff's motion would still fail because "prior restraints may be imposed if they amount to a reasonable time, place, and manner restrictions on speech." (*Id*. at *3 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1143 (9th Cir. 2005)). The court noted that the plaintiff "was not prevented from speaking about his case either publicly or privately" and found that confining communications in writing by email were "reasonable time, place, and manner restrictions and [the plaintiff] ha[d] not shown that they violated his First Amendment rights." *Id*.

As the Court is unaware of, and Plaintiff fails to identify, any authority clearly establishing a right to communicate orally with a prosecutor outside of a courtroom proceeding, Macintyre is entitled to qualified immunity.

Even assuming the absence of qualified immunity, limiting communications between a prosecutor and a defense attorney to writing or in court proceedings is not an unconstitutional prior restraint on speech.  "A prior restraint [on speech] is an administrative or judicial order that forbids certain communications issued before those communications occur." *Greater Los*

ORDER ON MOTION TO DISMISS (DKT. NO. 9) - 5

*Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414 (9th Cir. 2014).  The Ninth Circuit has held "that a statute permitting injunctions against speech is not *per se* unconstitutional and [has] further clarified that '[c]ontent-neutral injunctions that do not bar all avenues of expression are not treated as prior restraints.'" *Id*. at 431 (quoting *Maldonado v. Morales*, 556 F.3d 1037, 1047 (9th Cir. 2009)).

> Moreover,
>
> Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions.  We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

*Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984).

  Here, requiring all communications to be in writing or in court is content neutral as it does not bar all avenues of expressions.  And, given the fraught relationship between the JCPAO, Plaintiff, and Macintyre, the limitation provides all parties the ability to ensure there are no misrepresented communications amongst them, which is a significant interest for all involved.  The restriction also is narrowly tailored as it leaves open other options for communication, such as email or possibly even texting.  Plaintiff is not prohibited from advancing her client's legal claims and defenses in criminal matters before the JCPAO as Plaintiff maintains the ability to express her client's legal position in writing and in court.[1]

  In short, the Court finds Macintyre is entitled to qualified immunity and Macintyre's limitations on Plaintiff's communications with Macintyre was not a restraint on speech.

---

[1] Attorneys should make every effort to effectively communicate with each other to resolve legal disputes.  Presumably, speaking with one another via telephone or in person provides opportunities to efficiently resolves disputes.  Notwithstanding, the Court recognizes personalities clash on occasion and sometimes it can be beneficial to limit communications.

ORDER ON MOTION TO DISMISS (DKT. NO. 9) - 6

1  Accordingly, the motion to dismiss Plaintiff's third cause of action as to Macintyre is
2  GRANTED with prejudice.

3  **C. Cause of Action Number Twelve as to Macintyre – Tort of Outrage**

4  Defendants assert Macintyre enjoys a "litigation privilege" barring Plaintiff's outrage claim against Macintyre. (Dkt. No. 9 at 8.) The "litigation privilege [applies] where the conduct bears some relation to a judicial proceeding and where compelling public policy justifications support its application." *Scott v. American Express National Bank*, 514 P.3d 695, 700 (Wash. Ct. App. 2022). Where it applies, "attorneys, witnesses, and parties are immune from liability." *Id*. The privilege initially applied to witnesses to "preserve the integrity of the judicial process by encouraging full and frank testimony" in a judicial proceeding. *Id*. (cleaned up). It was extended to attorneys to ensure "that attorneys 'have freedom to secure justice for clients'" while advancing their interests in a lawsuit. *Id*. at 701 (quoting *Kearney v. Kearney*, 974 P.2d 872, 877 (Wash. Ct. App. 1999).

Litigation privilege is inapplicable in this case because Plaintiff's outrage claim is not based on conduct related to a particular judicial proceeding. Instead, it is based on a policy that applies to all matters in which Plaintiff might appear as a defense attorney. (*See* Dkt. No. 13 at 17.) Macintyre's November 4, 2022 letter to Plaintiff confirms the alleged policy encompasses more than just one particular judicial proceeding; it states that "any communication" must be documented. (*See* Dkt. No. 10 at 5–6.) Thus, the policy arguably would apply in matters in which criminal charges have not been formally initiated, i.e. in matters where there are no judicial proceedings. The Court, therefore, cannot conclude the litigation privilege would apply to the blanket policy at issue in this case.

      Notwithstanding, Plaintiff fails to allege a claim for outrage against Macintyre. "The elements of a claim for the tort of outrage or the intentional infliction of emotional distress are '(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" *Reyes v. Yakima Health Dist.*, 419 P.3d 819, 825 (2018) (quoting *Kloepfel v. Bokor*, 66 P.3d 630, 632 (2003)). Qualifying "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lemelson v. Wells Fargo Bank, N.A.*, 2022 WL 17092790 (W.D. Wash. November 21, 2022) (quoting *Reyes*, 419 P.3d at 825)). The conduct must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Id.* (quoting *Kloepfel*, 66 P.3d at 632). Thus, "the tort of outrage 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" because the law expects plaintiffs to "be hardened to a certain degree of rough language, unkindness and lack of consideration." *Kloepfel*, 66 P.3d at 632 (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)). Whether conduct is outrageous ordinarily is a question for the trier of fact. However, it is "initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 782 P.2d 1002, 1013 (Wash. 1989).

      In addition, to establish intentional or reckless infliction of emotional distress, a person must act with intent to cause emotional distress, know that emotional distress is certain or substantially certain to result from their conduct, or is aware there is a high degree of probability their conduct will cause emotion distress and nonetheless proceeds to deliberately disregard it. 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 14.03.03 (7th ed.)

Here, the Complaint asserts "Macintyre's refusal to engage professionally with the Plaintiff is outrageous conduct." (Dkt. No. 1 at 51.) Though not explicitly stated in the Complaint, this statement is based solely on Macintyre's decision to limit her communications with Plaintiff to writing or in-court proceedings. (*See* Dkt. No. 13 at 18.) This being the only basis for Plaintiff's outrage claim against Macintyre, the Court cannot conclude as a matter of law that such conduct is beyond all possible bounds of decency, would be regarded as atrocious, or utterly intolerable in the legal community. Plaintiff's outrage claim therefore fails.

Moreover, the Complaint never alleged Macintyre acted with intent to cause emotional distress, knew that emotional distress would result, or was aware there was a high degree of probability that emotional distress would result.

Defendants' motion to dismiss Plaintiff's outrage claim as to Ms. Macintyre is GRANTED with prejudice.

### D. Cause of Action Number Ten as to Macintyre – Libel

Defendants assert Plaintiff "fails to identify a libelous publication." (Dkt. No. 9 at 9.) Plaintiff responds, "Macintyre accused the plaintiff of making misleading statements as an attorney, leading to the adoption" of the communication policy. (Dkt. No. 13 at 20.) However, nowhere in the Complaint does Plaintiff identify the statements Macintyre allegedly published. The Complaint merely states, "[n]umerous false statements of fact regarding the Plaintiff were published by Kennedy, Ashcraft, Hunsucker and Macintyre." (Dkt. No. 1 at 47.) The failure to identify the actual statements allegedly made or the method of publication dooms Plaintiff's libel claim against Macintyre.

Accordingly, Defendants' motion to dismiss the claim of libel as to Ms. Macintyre is GRANTED. Although Defendants request sanctions against Plaintiff for filing this claim against Macintyre, the Court declines to enter sanctions.

### E. Cause of Action Number One as to Macintyre – Violation of Civil Rights Under Color of Law (42 U.S.C. § 1983)

Defendant seeks dismissal of cause of action number one as to Macintyre "as derivative of her second and third claims."[2] Plaintiff responds that the first cause of action "is as to all defendants" and reiterates the name of the cause of action. (Dkt. No. 13 at 21.)

To the extent cause of action number one against Macintyre is based on the same allegations asserted in cause of action number three, the claim fails as already analyzed in Section III.B., *supra*. To the extent the claim is based on other conduct, it is unclear what the other conduct is that Plaintiff uses to support her first cause of action against Macintyre. The first cause of action merely "repeats, re-alleges, and incorporates each and every allegation of each and every paragraph" to support the claim against all defendants without identifying the conduct particular to Macintyre supporting the claim. (Dkt. No. 1 at 28.)

Accordingly, the motion to dismiss Plaintiff's cause of action number one as to Macintyre is GRANTED.

### F. Cause of Action Number Five as to Macintyre – Conspiracy to Violate Civil Rights

---

[2] Cause of action number two is an alleged violation of due process rights under the Fifth and Fourteenth Amendments. This claim stems from Jefferson County's failure "to provide [Ms. St. Marie] with a procedurally constitutional *Loudermill* hearing." (Dkt. No. 1 at 29.) The second cause of action relates to Plaintiff's termination from the JCPAO, which occurred before Macintyre was employed by the JCPAO. Although the Complaint states cause of action number two relates to the "acts of the Defendants, and each of them" (Dkt. No. 1 at 31), it does not pertain to Macintyre. Thus, as to Macintyre it is uncertain how cause of action number one is derivative of cause of action number two.

Defendants seek dismissal of cause of action number five as to Macintyre. Plaintiff agrees cause of action number five is not filed against Macintyre. (Dkt. No. 13 at 22 n.4.) There is no dispute that cause of action number five does not apply to Macintyre and, therefore, there is no claim to dismiss.

**G. Cause of Action Number Thirteen as to Macintyre – Tortious Interference with Business Expectancy**

Defendants seek dismissal of cause of action number thirteen as to Macintyre because the "claim fails on the pleadings" and Plaintiff "fails to identify an improper purpose or means." (Dkt. No. 9 at 11.)

To establish a claim for tortious interference with a business expectancy, a party "must establish that "'(1) there exists a valid contractual relationship or business expectancy, (2) the defendant had knowledge of the same, (3) the defendant's intentional interference induced or caused a breach or termination of the relationship or expectancy, (4) the defendant's interference was for an improper purpose or by improper means, and (5) the plaintiff suffered damage as a result.'" *Bombardier, Inc. v. Mitsubishi Aircraft Corporation*, 383 F.Supp.3d 1169 (W.D. Wash. 2019) (quoting *Evergreen Moneysource Mortg. Co. v. Shannon*, 274 P.3d 375, 383 (Wash. Ct. App. 2012)). "Interference with a business expectancy is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Newton Ins. Agency, & Brokerage, Inc. v. Caledonian Ins. Group*, 52 P.3d 30, 34 (Wash. Ct. App. 2002) (quoting RESTATEMENT (SECOND) OF TORTS §766B, cmt. d.). "Interference is for an improper purpose if it is wrongful by some measure beyond the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade profession." *Id*.

The Complaint asserts that "[b]y limiting Plaintiff's access to the JCPAO, the public humiliation of flashlight searches, and the [JCPAO's] open hostility toward Plaintiff in open court, the County interfered with Plaintiff's business expectancy." (Dkt. No. 1 at 52.) It further alleges that "[a]s a proximate cause of the aforementioned, potential clients expressed concern about receiving a fair trial with Plaintiff as their counsel" and that "Plaintiff suffered damages[.]" (*Id.*)

The Complaint, however, does not identify that Macintyre caused a breach or termination of the Plaintiff's business relationship or expectancy. The Complaint makes no allegation that Plaintiff lost a client or that her representation was terminated because of Macintyre's conduct. Identifying that potential clients expressed concerns about receiving a fair trial with Plaintiff as their counsel without identifying that Plaintiff was terminated or not hired because of Macintyre's conduct is insufficient. There also are no factual allegations indicating that Macintyre desired to interfere with Plaintiff's business expectancy or that Macintyre knew the interference would be certain or substantially certain to occur as a result.

Plaintiff's claim for tortious interference with business expectancy is insufficiently plead. Thus, Defendants' motion to dismiss Plaintiff's claim for tortious interference with business expectancy as to Ms. Macintyre is GRANTED.

## IV.    CONCLUSION

Accordingly, and having considered the Defendants' motion to dismiss (Dkt. No. 9), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that defendants' motion is GRANTED as follows:

1. Cause of Action Number One as to Macintyre is DISMISSED.

2. Cause of Action Number Three as to Macintyre is DISMISSED with prejudice.

3. Cause of Action Number Ten as to Macintyre is DISMISSED.

4. Cause of Action Number Twelve as to Macintyre is DISMISSED with prejudice.

5. Cause of Action Number Thirteen as to Macintyre is DISMISSED.

6. As acknowledged by Plaintiff, cause of action number five was not filed against Macintyre.

7. Defendants' request for sanctions is DENIED.

In addition, the Court recently stayed Macintyre's deposition. (*See* Dkt. No. 17.) That deposition may now proceed forward, and this Order should be used by the Parties as guidance regarding the scope of Macintyre's deposition.

Dated this 25th day of August 2023.

David G. Estudillo
United States District Judge